UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

IN RE:    DENISE A. KOWALEWSKI          Case No. 06-20774
          JACOB R. KOWALEWSKI,
                                        Chapter 13
                    Debtors.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

This case deals with another facet of the question of how to determine how much "disposable income" a debtor has to devote to a Chapter 13 repayment plan under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The parties in this case ask how the debtors should calculate the amount of tax expense they are allowed to subtract from their income in conducting the disposable income calculations. The Court concludes that the debtors must calculate their tax expense by taking their Schedule I income and making a good-faith effort to calculate the actual tax they will owe on that income.

I.    **Factual Background**

The debtors filed their Chapter 13 petition on March 1, 2006; Title 11 as amended by BAPCPA is the controlling law. The debtors' Form B22C Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C") indicated that their combined "currently monthly income" was $4,340.75 per month. The relevant median family income for a family of the

2006 OCT 31 PM 4:06

FILED

1

debtors' size (2) in their state of residence (Wisconsin) was approximately $4,160; thus, these debtors are "above-median income" debtors, as that term is used in the BAPCPA universe.

A.    *The Trustee's Objection to Confirmation*

On the day they filed their petition, the debtors filed their Chapter 13 plan. The trustee objected to confirmation of the plan because, in the trustee's view, the plan did not devote all of the debtors' "projected disposable income" to paying their creditors, as required by 11 U.S.C. § 1325(b)(1)(B). The trustee argued that, in filling out their Form B22C, the debtors subtracted from their income an excessive amount for tax expenses, resulting in the appearance that the they had less disposable income to devote to their Chapter 13 plan than actually was the case.

Specifically, the trustee pointed out that on Form B22C, the debtors subtracted $1,126.37 from their income for tax expenses. As a result of deducting this amount, the debtors showed on Line 58 of the form that they had disposable income of *negative* $1.30 per month to devote to a Chapter 13 plan. In contrast, the trustee calculated that the debtors' tax expense should have been only $951. The trustee asserted that, had the debtors subtracted this amount from their income rather than the $1,126.37 amount, they would have had $174 per month available as disposable income to devote to repaying their creditors.

The discrepancy between the trustee's tax expense number and the debtors' tax expense number, the trustee argued, was due to the fact that the debtors

2

subtracted as a tax expense the amount of money they had withheld from their paychecks each pay period, while the trustee subtracted as a tax expense her best estimate of what the debtors' actual taxes would be. The trustee reached her number by applying the 2006 tax rates and 2006 standard deduction and exemption amounts to the income that the debtors showed on their Schedule I.

The trustee maintained that when completing Form B22C to determine how much disposable income an above-median-income debtor has to commit to a plan, a debtor must subtract her *actual* tax expense, not the amount of money that debtor has withheld from her paycheck. In support of this position, the trustee noted that § 1325(b)(3) of BAPCPA allowed above-median-income debtors to subtract as expenses those amounts "reasonably necessary *to be expended*," and that Form B22C itself instructed debtors, on Line 30, to subtract the "average monthly expenses that [the debtor] *actually incur[s]* for all federal, state, and local taxes . . . ." (Emphasis added) Thus, the trustee argued, the language of the statute and the approved form required the debtors to subtract their actual tax expenses to determine disposable income, and not the amount they had withheld from their paychecks.

B.    *The Debtors' Response to the Objection*

The debtors express both legal and practical concerns with the trustee's position.

Case 06-20774-pp    Doc 31    Filed 10/31/06    Page 3 of 27

1.      Interpretation of § 1325 under BAPCPA

The debtors begin by noting that § 1325(b)(1)(B) prohibits a court from confirming a plan over a party's objection unless "the plan provides that all of the debtor's *projected* disposable income . . . will be applied to make payments under the plan." (Emphasis added) The next subsection, § 1325(b)(2), defines the term "disposable income" as "current monthly income . . . less amounts reasonably necessary to be expended" for certain purposes. For above-median-income debtors, § 1325(b)(3) defines "amounts reasonably necessary to be expended" by referring to §§ 707(b)(2)(A) and (B).

The debtors argue that, while subsection (b)(1) of § 1325 requires a debtor's plan to devote all of the debtor's "*projected*" disposable income to a plan to overcome an objection to confirmation, neither subsection (b)(3) nor §§ 707(b)(2)(A) and (B) say anything about "*projected*." They argue that the two latter sections do not specifically direct debtors to look into the future to determine which expenses they must subtract from their current monthly income to figure out how much they can devote to a plan.

The debtors further argue that Form B22C–the form Chapter 13 debtors must fill out for the purposes of determining disposable income (as well as the plan commitment period)–does not anticipate that above-median-income debtors will use current or future income or expenses. The form requires those debtors to list as income the average of their income from the six-month period preceding the month

4

in which they filed for bankruptcy–an historical figure, rather than a current or future figure.  Thus, the debtors argue, any method of calculating expenses that requires debtors to figure out what their expenses might be in the future does not comport with what they conclude is the beginning premise of Form B22C–that a debtor must list historical, and not current or future, financial information.

Failure to comport with Form B22C would have strange practical consequences when it comes to tax expenses, the debtors argue.  Form B22C requires debtors to list historical income.  If debtors must subtract from that historical income *actual* tax expenses, many debtors would end up with disposable income figures that under- or over-stated their actual disposable income.  Why?  Because, as the debtors point out, many people who file for bankruptcy experience changes in their financial situations around the time they file.  A debtor who had a relatively high income during five of the six months preceding the month in which he filed might have a much lower income at the time he files.  Thus, subtracting his lower tax expense from his higher, pre-filing income would make it look as if he had more disposable income available than he actually has.  Conversely, a debtor who had a lower income in five of the six preceding months, then had a higher income at the time of filing, would appear to have less available as disposable income than she actually has.

The debtors also argue that the trustee's proposed method of having debtors estimate what their tax obligations might be contradicts § 707(b)(2)'s requirement

Case 06-20774-pp    Doc 31    Filed 10/31/06    Page 5 of 27

that, for certain expenses, the debtor must list his or her "actual" expenses. The number a debtor would reach by estimating tax obligations without knowledge of future events, the debtors argue, would not be an "actual" expense figure, but a fictitious figure created by using a flawed model.

For these reasons, the debtors argue that the trustee's objection has no legal merit.

### 2. Practical Difficulties

The debtors argue that the trustee's position is impractical in several ways. First, they assert that the trustee's proposal–that debtors estimate the tax they actually will owe by using the tax tables, deductions and exemptions in place at the time the debtors file their petition–would require debtors to "hire a CPA after filing . . . in order to determine the potential tax ramifications of future circumstances." They point out that a debtor does not necessarily know what the tax rates will be at the time he files his bankruptcy petition. He does not know whether the IRS will change its standards. He does not know what the next year of his life will hold–whether he will lose (or gain) employment, get divorced, sell real estate, or experience other life events which would impact his tax status. In order for a debtor accurately to estimate his actual taxes, the debtors argue, that debtor would need to be able accurately to predict the future.

Using the amounts the debtor has withheld from her paychecks as the tax expense, the debtors maintain, is more logical and practical. The debtors point out

6

that according to the IRS, income taxes are "pay-as-you-go" taxes. That is, a taxpayer owes the tax the minute she earns the income upon which the tax is based. This is why, the debtors assert, employers are required to withhold money from employees' paychecks, and why the IRS requires revenue agents to "verify adequate tax withholding." (*Citing* Internal Revenue Manual § 5.8.5.2.2 (09-1-2005)) To truly calculate a debtor's current, immediate tax obligation, the debtors argue, one must look at the amounts the employer is required to withhold, because they represent the amount of tax liability that the debtor has, up to that point, actually accrued.

Flowing from this argument is the debtors' assertion that employers are required by law to withhold money from employee checks for the purposes of escrowing taxes. The debtors cite 26 U.S.C. § 3402 for the proposition that an employer–and thus, a debtor–has no choice but to withhold, and conclude from this requirement that whatever amounts the employer withholds are the "actual" expenses that the debtor must pay each month (or each pay period). Thus, there is nothing inappropriate, the debtors argue, about a debtor listing those withheld amounts as a tax expense on Form B22C.

The debtors also argue that using the withholding amounts is a simple method for debtors to use in determining tax expenses. Form B22C requires a debtor to list the "average monthly expense" actually incurred for taxes. The debtors argue that withholding–unlike actual tax expenses–is calculated on a monthly basis, and thus provides a quick, easily-obtainable number for a debtor to

average out when filling out Form B22C.

Finally, the debtors respond to the trustee's concern that debtors could manipulate the amount of disposable income they appear to have available to fund a plan by manipulating their withholding amounts. The debtors argue that there is a simple remedy for this problem–the trustee could review each debtor's Form B22C and compare the amount the debtor lists there with the amount in the IRS withholding tables. If it looks like the debtor is over-withholding, the debtors argue, the trustee may object to confirmation of the plan.

C. *The Trustee's Reply*

The trustee asserts that, contrary to subjecting debtors to complicated and expensive procedures, her proposed method of tax calculation would be relatively simple for debtors to follow. She states that she is "merely asking that the Court require debtors to calculate a reasonably accurate amount of tax commensurate with the sophistication of their financial affairs . . . ." She points out that many Chapter 13 debtors have

> relatively straightforward tax profiles involving wage or salary income, a standard deduction or limited deductions for mortgage interest and taxes, a limited number of dependency exemptions and possibly some tax credits such as the earned income credit, child credit and child care credit.

Trustee's Brief at p. 9. She identifies a number of IRS resources that help taxpayers calculate projected tax obligations, and notes that most tax-preparation software applications allow debtors to project tax expenses.

8

The trustee also points out that one group of Chapter 13 debtors–those who are self-employed–historically have had to estimate their taxes. The trustee implied that self-employed debtors have managed to make the required estimates in the past, and therefore that non-self-employed debtors could do so as well.

Finally, the trustee responded to the debtors' argument that withholding amounts should be used because they are calculated on a monthly basis. The trustee points out that income taxes are progressive in nature–the percentage of tax the taxpayer owes gets higher as her income gets higher. The percentage of tax that a debtor would owe on the first $1,000 of her income, therefore, is lower than the amount she will owe on the 50th $1,000 of her income–it is not clear how much tax she actually will owe until she knows her total income for the year. The trustee argues that "[c]alculating income tax on just a monthly income would yield an absurd result because of the escalating tax rates for greater income amounts." Accordingly, the trustee urges the Court to hold that debtors must measure their tax on an annual basis, then divide it by twelve to obtain the average monthly tax expense they should subtract on Form B22C.

II.    **Jurisdiction**

The issue in this case involves a core proceeding under 28 U.S.C. § 157(b)(2)(A), and this Court has jurisdiction under 28 U.S.C. § 1334(b).

Case 06-20774-pp    Doc 31    Filed 10/31/06    Page 9 of 27

III.   **Discussion**

     A.     This Court's Recent Decision in *In re Balcerowski*

The Court notes that recently it issued a decision on the question of whether debtors may use the amounts withheld from their paychecks as the tax expense for Form B22C/disposable income purposes.  In In re Balcerowski, ___ B.R. ___, 2006 WL 3019211, No. 06-21695 (Bankr. E.D. Wis. Oct. 17, 2006), the Court held that "the appropriate way to calculate the tax expense for this purpose is for the debtor to estimate, and subtract from his income, the actual tax he will incur, not the amount he has withheld from his wages." Id. at *1.

The Court reached this conclusion for several reasons.  First, BAPCPA allows above-median-income debtors to subtract from their incomes those amounts "reasonably necessary *to be expended* . . ." for certain expenses.  The Court found that the phrase "*to be expended*" was a forward-looking phrase, anticipating the obligations that a debtor would incur.  Id.. at *5-6.

Second, the Court found that § 707(b)(2)(A)(ii)(I) directed parties to subtract "the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service . . . ."  The IRS Manual defines taxes as "other necessary expenses" if the taxes are for "*current* federal, FICA, Medicare, state and local taxes." Id. (citing Internal Revenue Manual 5.15.1, Financial Analysis Handbook at 5:15.1.10, Other expenses (04-01-2004)).  The word "actual" in § 707(b)(2)(A)(ii)(I) and the word "current" in the IRS manual led the

10

Court to conclude that the debtor could subtract on Form B22C only the amount of money that the debtor actually would end up paying to the taxing authorities. Id..

The Court discussed in <u>Balcerowski</u> the nature of withholding tax, noting that it was not unusual for taxpayers to over-withhold for a variety of reasons. There are taxpayers who under-withhold as well. It follows that the amount of money a taxpayer has withheld from her pay is not necessarily the amount of "actual" tax expense that she will end up owing the taxing authorities. <u>Id.</u> at p. 11. Because the statute and Form B22C require a debtor to subtract her "actual" tax expense, a debtor cannot use the amount of money withheld from her paycheck as the tax expense she subtracts on his Form B22C—and that is what this Court held in <u>Balcerowski</u>. <u>Id.</u> at *5.

The debtor in <u>Balcerowski</u> also argued that forcing him to subtract his actual (at the time he filed his petition) tax expense from his historical, "current monthly income"—the average of his income over the six months preceding the month in which he filed his bankruptcy petition—yielded an unreliable disposable income figure for many debtors. <u>Id.</u> at p. 16. The debtor in <u>Balcerowski</u> made more money during the historical, "current monthly income" period than he did at the time he filed his petition, so if he subtracted his actual (lower) tax expense from his historical (higher) income, the result was a falsely-inflated disposable income number. The opposite would be true for a debtor who had a lower income in the historical, "current monthly income" period and a higher income at the time of

11

filing–subtracting her actual (higher) tax expense from her historical (lower) income would result in a falsely-deflated disposable income number. In neither case would the calculations yield a figure that reflected the actual amount of money the debtor had available to devote to a plan. Id. at *7-8.

The Court agreed with the debtor in Balcerowski that this procedure produced unreliable–and sometimes unfair–results. The Court concluded that the appropriate way to determine a reliable disposable income figure was to subtract the debtor's actual tax expense, not only from his historical, "current monthly income" figure, but from the actual income figure the debtor listed on his Schedule I. Id..

Finally, in Balcerowski the Court declined to dictate to the parties the appropriate way to determine a debtor's actual tax expense, holding only that debtors could not use the amounts withheld from their paychecks. Id. at *6. The Court noted that determining the "actual" tax expense for a debtor posed a challenge:

> Admittedly, accurately determining the amount of tax that a debtor "actually incur[s]" is problematic. If a debtor files for Chapter 13 relief on December 31, he is much more likely to estimate accurately the amount of tax he will owe than if he files his petition on February 20. The petitioner who files on February 20 may not be able accurately to predict the future. He does not know if he will be laid off or fired, he does not know if he will get a second job, he does not know if he will get a raise, he does not know how many hours of overtime he will work. Neither does he know whether the tax tables and regulations will change over the course of the year.

Id.

The Court in <u>Balcerowski</u> left it to the parties to determine how best to resolve these issues, and concluded only that "the debtor must subtract on line 20 [of Form B22C], as best he can estimate it, his actual tax expense . . . ." <u>Id.</u>

B.   <u>The Further Issues Raised in This Matter</u>

The Court's decision in <u>Balcerowski</u> addresses some of the issues the parties raise in the case at bar.  It resolves the question of whether a debtor may use the amounts withheld from his paycheck as the "tax expense" he subtracts from his income on line 30 of Form B22C.  The debtors in this case present arguments on that issue that the <u>Balcerowski</u> debtors did not raise, however, and the Court–while not changing its holding–will address those arguments here.

Further, the parties in this case urge the Court to do what it declined to do in <u>Balcerowski</u>–advise the parties on how, exactly, they should calculate a debtor's "actual" tax expense.  The Court will address that issue, as well.

> 1.   *Debtors must subtract their actual tax expenses on line 30 of Form B22C, not the amount they have withheld from their paychecks.*
>
> a.   Absence of the word "projected"

The debtors raise an interesting statutory interpretation argument in support of their contention that they should be able to use withholding as their tax expense amount.  The argument relates to the structure of the BAPCPA version of § 1325(b).

Prior to the implementation of the BAPCPA amendments, § 1325(b) read, in

13

pertinent part:

> (1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan– . . .

>> (B) the plan provides that all of the debtor's projected disposable income . . . will be applied to make payments under the plan.

> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended [for various enumerated reasons].

In that pre-BAPCPA version, the word "projected" showed up in only one place–§ 1325(b)(1)(B), the section requiring that all of the debtor's "projected" disposable income be devoted to the plan to avoid denial of confirmation. Subparagraph (2) went on to define "disposable income"–oddly, it did *not* define "projected disposable income," the actual phrase used in subparagraph (1). Yet subparagraph (2) clearly purported to define the term used in subparagraph (1)–it began with the words "[f]or the purposes of this subsection."

There were at least two ways to read this language. First, one might read § 1325(b) as a whole. In other words, one might paraphrase § 1325(b) as follows: A debtor cannot have her plan confirmed over objection unless her plan devotes all of her projected disposable income to paying her creditors. How does a debtor figure out what "disposable income" to project? She calculates the income that she will receive, and subtracts from it the amounts "reasonably necessary to be expended."

The second way to read pre-BAPCPA § 1325(b) was in separate parts–disjunctively. Under this reading, one might paraphrase § 1325(b) as follows:

14

A debtor cannot have his plan confirmed over objection unless his plan devotes all of his projected disposable income to paying his creditors. "Disposable income" is the debtor's income minus amounts "reasonably necessary to be expended." "Projected disposable income" and "disposable income" are two different things.

The first reading–the reading in which the word "projected" modifies the phrase "disposable income" anywhere that phrase appears in § 1325(b)–is the sensible reading. It is a guiding principle of statutory construction that a statute should be interpreted to avoid both inconsistency and absurdity. It would make little sense for the legislature to require a debtor to devote all of her "projected disposable income" to the plan and then, in the paragraph purporting to further clarify that requirement, define a totally different concept.

Further, the principle of *ejusdem generis* dictates that when the general follows the specific in a statute, the general words should be read to apply to the specifically-enumerated ones. In this case, Congress began with the specific–"projected disposable income"–then explained more generally a part of that phrase–"disposable income." It did not choose to define "projected"–perhaps it thought that the meaning of that word self-evident. It defined only part of the phrase–"disposable income." Nonetheless, the general "disposable income" should continue to be modified by the specific "projected."

The changes wrought by the BAPCPA amendments do not change this analysis. The debtors here argue that neither § 1325(b)(3) (that portion of the

Case 06-20774-pp    Doc 31    Filed 10/31/06    Page 15 of 27

BAPCPA version that instructs above-median debtors on how to calculate "amounts reasonably necessary to be expended") nor §§ 707(b)(2)(A) and (B) (that portion of the BAPCPA version that lists specific expenses and directs above-median income debtors to the guidelines for those expenses) direct debtors to calculate "projected" expenses. They are correct to an extent–neither of these statutory sections contains the word "projected," or any other forward-looking word.

But while BAPCPA has defined in much more detail the term "disposable income" for above-median income debtors, the fact remains–§ 1325(b)(2) begins by saying that "[f]or the purposes of this subsection, 'disposable income' means . . . ." (Emphasis added.) The statute continues to require a debtor to devote all of her "projected disposable income" to the plan, and continues to define what the "disposable income" part of "projected disposable income" means. The word "projected" still modifies all of the definitions that come after it–just like it did pre-BAPCPA.

This fact, coupled with the fact that § 1325(b) still uses the words "to be expended" (forward-looking words, as the Court found in Balcerowski) and that § 707(b)(2)(A)(ii)(I) still uses the words "actual monthly expenses" (referring to what the debtor actually will owe, not what he chooses to withhold), confirms the Court's conclusion in Balcerowski–debtors must estimate, then subtract, their *actual* tax expenses on Form B22C.

16

b.    Structure of Form B22C

The debtors further buttress their argument by pointing out that Form B22C is not structured to handle current or anticipated income and expenses. Part I of the form requires debtors to total, then average, all of the income they received from various sources in the six months preceding the month in which they filed for bankruptcy protection. This section allows the debtor to list only historical income information. Part II of the form walks the debtors through using this historical income information to calculate the applicable "commitment period"–in other words, the duration of the debtor's plan. Part III guides the debtors through the process of using the historical income to determine whether they are above- or below-median-income debtors; the category into which the debtors fall determines how they calculate their expenses.

If, after completing Part III, a debtor discovers that he is an above-median-income debtor, he must advance to Part IV of the form–the part in which the debtor subtracts from his historical income the various expenses the statute allows. Some of the categories of expenses are set–above-median-income debtors must obtain a specific number from the IRS National and Local Standards. These categories include food, clothing, household supplies, personal care items, housing and utilities, and transportation.

But when the debtor reaches line 30 of Part IV, he is instructed to "[e]nter the total average monthly expense" that he "actually incur[s] for all federal, state,

17

and local taxes . . . ." This "actually incur" (or, in some places, "actually pay") language shows up in the instructions for calculating other expenses–life insurance premiums on line 32, education of a physically- or mentally-challenged child expenses on line 34, childcare expenses on line 35, health care expenses not covered by insurance on line 36. In each instance, the form requires the debtor to subtract the "average monthly" amount that he actually pays for these sorts of expenses.

These words–"average monthly" and "actually"–are more ambiguous in the context of Form B22C than they first appear. Most people understand that to obtain one's "average monthly" expenses, one should total the amount spent each month for a period of months on a particular expense, then divide that sum by the number of months. But Part IV of Form B22C does not tell the debtor *which* months to add up, or how many.

This is a marked contrast from Part I of Form B22C–the part where the debtor lists his income. On line 1 of Part I, the instructions state:

> All figures must reflect average monthly income received from all sources, *derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before filing*. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line.

(Emphasis added) Thus, a debtor who reads the instructions in Part I knows exactly how many months' worth of income he should total and divide by–six. He also knows *which* six months' income he should average–the six full months preceding the month in which he filed his bankruptcy petition.

18

When the above-median-income debtor reaches Part IV, however, the instructions give him no such guidance. The specific instructions in Part I refer only to income—not expenses. The instructions in Part IV for calculating expenses tell the debtor that he is to subtract, for example, the "average monthly amount that [he] actually expend[s] on childcare." But they do not tell him how to determine that amount. Is he to take the average of the childcare payments he made over the calendar year preceding the year in which he filed his petition? Is he to use the six-month historical time frame he was told to use for his income? Is he simply to take the amount he paid in childcare the month he filed his bankruptcy petition, annualize that, and divide it by 12?

Further, childcare expenses—like tax expenses—are subject to change based on circumstances. A debtor may spend a certain amount each month for childcare at the time she files her petition. Three months later, she may be spending more because she has had another child. Eighteen months later she may be spending less because her child is no longer an infant, and therefore daycare is less costly. Six months after that, she may be spending nothing on childcare, because her spouse lost his job and now is at home with the children. The form does not take these factors into account. As a result, using Form B22C theoretically cements into place for the life of the plan a disposable income figure that, in reality, is fluid and subject to change.

As the debtors point out, if they must subtract on Part IV of Form B22C their

19

current and projected tax expenses from their historical income on Part I, the result will be a falsely inflated or deflated disposable income amount for any debtor whose income has changed significantly at the time of filing. The only way to avoid this result on a form which derives income information from the past, they argue, is to subtract the amounts that were withheld from their paychecks during that historical time period. Then the Form B22C calculations will not result in falsely high or low disposable income amounts.

The debtors' argument that subtracting actual tax expenses from historical income does not yield reliable disposable income amounts in many cases is well-founded. But their solution—to allow debtors to subtract the amount withheld from their paychecks instead of their actual tax amounts—would yield unreliable results, as well. As this Court discussed in <u>Balcerowski</u>, and as the trustee argues in this case, it is the taxpayer who decides how much to withhold from each paycheck. There is nothing to prevent a debtor from over-withholding—in fact, for many people, withholding more tax than they actually will owe is a savings vehicle. Conversely, there are taxpayers who under-withhold—accidentally or otherwise. To allow a debtor to subtract as a tax expense the amount he or she chooses to have withheld could, in the worst cases, create an opportunity for debtors to manipulate their withholding amounts to avoid having to pay creditors, or could result in debtors with plans that are not feasible as a result of having a falsely-inflated disposable income figure because they under-withheld.

20

In short, the Court returns, as it did in <u>Balcerowski</u>, to the purpose of the disposable income calculations. The point of figuring out how much disposable income a Chapter 13 debtor has is to ensure that, after he subtracts from his income the money necessary to take care of his family and himself, he devotes the remaining dollars to repaying his legitimate creditors. In light of this fact, it is important to try, to the extent possible, to ascertain a reliable disposable income figure. Allowing debtors to subtract as a tax expense amounts that often will not end up being taken by the taxes authorities does not further this goal.

        c.        Statutory mandate–"actual" expenses

The debtors also argue that "estimated" tax expenses are no more "actual" than withholding numbers. They point to the fact that a debtor cannot know his future. When he estimates what his tax obligations will be, the only option he has is to assume that the status quo will remain the status quo for the foreseeable future. This assumption, of course, rarely is well-founded. Change is part of the human condition, and sometimes it seems an even more integral part of the condition of a debtor in bankruptcy.

The Court agrees that a debtor's estimate of what her tax obligations may end up being is not necessarily accurate. That is why it is called an "estimate." But the trustee has raised some compelling responses to this concern.

First, in this particular case, the trustee has estimated the *maximum* amount of tax these debtors could owe, assuming that their income does not increase. They

21

may very well end up owing less than the trustee has estimated, and the trustee acknowledges that the result might be that money which could go to the unsecured creditors will be "left on the table" for the debtors. But, under the circumstances of this particular case, the trustee indicates that she is willing to take that risk, erring on the side of the debtors.[1]

Second, the trustee points out that there are a number of resources available to debtors and their counsel to help them estimate their taxes as accurately as possible. Needless to say, these resources are no more able to guarantee an exact prediction than are debtors. But assuming a continuation of the status quo, they assist debtors in making a fairly accurate prediction regarding what their tax obligations will be.

The Court finds the trustee's responses persuasive, but adds a further gloss. The fact that a debtor's financial situation can change significantly after he files for bankruptcy is not new. This fact of life existed prior to the implementation of BAPCPA. In the pre-BAPCPA world, debtors had to calculate disposable income under § 1325, and that required them to subtract tax (and other) expenses from their incomes. The debtor did this on his Schedules I (for income) and J (for expenses)–documents that had to be filed with his petition, or shortly thereafter. The numbers reflected on a pre-BAPCPA debtors Schedules I and J, then, were

---

[1] The trustee explicitly confined this concession to this particular case, and stated that she was not enunciating a universal policy of agreeing that all above-median-income debtors could subtract the maximum amount of tax they might owe.

22

income and expense numbers that were accurate around the time he filed his petition, and those were the numbers that a trustee reviewed to determine whether the debtor was devoting all of his projected disposable income to the plan.

Those pre-BAPCPA debtors, like the debtors in this case, were not Cassandras. They did not know the future–they did not know if their income and expense numbers were going to change over the life of their Chapter 13 plan, or how those numbers would change. Thus, the amount of "disposable income" resulting from subtracting expenses from income in the pre-BAPCPA world was accurate only to the extent that the debtor's circumstances remained the same, and sometimes not even then. In that sense, the disposable income figures debtors and trustees calculated pre-BAPCPA were estimates–just like they are post-BAPCPA.

In both the pre-BAPCPA and post-BAPCPA worlds, then, debtors must do the best they can to determine how much actual, disposable income they have to devote to paying creditors. If they get it wrong–if it ends up that they have less disposable income available than their good-faith calculations at the time of filing predicted–then they have options available to them, such as the provision in § 1329 which allows debtors to modify their plans post-confirmation for certain reasons. But it is the Court's conclusion that estimating actual taxes, rather than using withheld amounts, gets debtors as close to a realistic, "actual" tax figure as possible at any point prior to the end of the tax year.

The debtors also argue that because employers are required by law to

23

withhold money from their employees' paychecks for taxes, those withholding amounts *are* the "actual" tax the debtors owe. This argument ignores the fact that it is the employee who determines how much money to withhold. Employers are required to withhold, but the *amount* they withhold is determined by the employee. As discussed previously, many employees over-withhold. The portion that is over-withheld is not an "actual" tax expense. It is an actual decrease in the amount of disposable income a debtor has at the moment the money is withheld, but it is not an actual tax expense.

2. *The Court Declines to Set in Stone an Appropriate Method of Calculating Actual Tax Expenses.*

a. Base Income

A number of courts–including this one–have concluded that when determining how much "projected disposable income" a debtor has to commit to a plan, one must look both at the historical, "current monthly income" (under § 101(10A) of BAPCPA, the average of the debtor's income from all sources for the six full months prior to the month in which she filed her petition) and the Schedule I income (in other words, the income at the time of filing). *See, e.g.,* In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006); In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006); In re Kibbe, 342 B.R. 411 (Bankr. D. N.H. 2006); In re McGuire, 342 B.R. 608 (Bankr. W.D. Mo. 2006); In re Fuller, 346 B.R. 472 (Bankr. S.D. Ill. 2006). As this Court held in Balcerowski, it follows that the income upon which the debtor must base her tax calculations is not just her historical, "current monthly income"

24

income, but her Schedule I income. <u>Balcerowski</u> at pp. 18-19.

In some cases–cases in which the debtor's income was the same during the six full months preceding the date on which he filed his petition as it was on the petition date–this number will be the same. But in cases in which the debtor's income has changed significantly around the time he files the petition, the Schedule I figure may be higher or lower than the "current monthly income" figure. Again, if the point is to determine with some degree of accuracy how much money the debtor actually has to devote to the plan, it makes sense to base disposable income calculations on the amount of income the debtor actually makes, rather than on what he may have made in the recent past.

b.    Method of Calculation

Left open in <u>Balcerowski</u> was the issue of how the debtor should calculate what the tax on his Schedule I income is likely to be. The trustee in this case asks the Court to require that a debtor multiply his Schedule I income by twelve, apply the tax, expense and deduction tables in effect on the date of filing to this annualized number to determine the likely tax for the year, then divide that number by twelve.

The trustee's proposal is one reasonable method of calculating actual tax expenses. She supports the proposal with sound reasoning–her method would take into account the progressive nature of taxes, for example. But the Court does not find that the trustee's proposal is the only method available for a debtor to make a

25

good-faith effort to determine his actual tax expense.

All debtors are different. A method of calculating actual taxes that may be perfectly reasonable for a debtor who files in February may not be reasonable for one who files in November. A method that works quite well for debtors represented by lawyers may not be workable for debtors who represent themselves. A method that works for a debtor who owns no assets may yield inaccurate results for a debtor who owns a business or real estate. While it is tempting to announce a single method of calculating actual tax expense in order to avoid future disagreements over this issue, the Court finds that a one-size-fits-all method is not appropriate.

As it did in Balcerowski, the Court declines to require debtors to use a particular method of calculating their actual tax expenses. Rather, the Court holds that a debtor must make a good-faith effort to determine his actual tax expenses, and leaves to the individual debtor the decision about what method he will use to make this good-faith effort.

## IV. **Conclusion**

For all of the reasons discussed above, the Court SUSTAINS the trustee's objection to confirmation of the debtors' Chapter 13 plan. The Court holds that, in calculating the amount of tax expense they can deduct on line 30 of Form B22C, the debtors must take their Schedule I income and make a good-faith effort to calculate the actual tax they will owe on that income. The Court will allow the debtors 30 days from the date of this Order to amend the plan to reflect the disposable income

26

amount that results from those calculations.

SO ORDERED this 31st day of October, 2006.

_____
HON. PAMELA PEPPER
United States Bankruptcy Court

Cc:    Denise A. Kowalewski
Jacob R. Kowalewski
Debtors

Arnold F. Lueders, III
Counsel for the debtors

Mary B. Grossman
Chapter 13 Standing Trustee

Jack N. Zaharopoulos
Rebecca Rogers Garcia
Office of the Chapter 13 Trustee

Office of the U.S. Trustee